UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| A.P., minor by her parent and guarding S.P. and S.P. individually,<br><br>Plaintiffs,<br><br>v.<br><br>THE ALLEGRO SCHOOL, INC., DEBBY LEWINSON, RICHARD ZANELLA, PRINCIPAL, NIAMAH GRAHAM, TEACHER, JOHN DOES 1-5, (AS YET UNIDENTIFIED INDIVIDUALS) AND ABC ENTITIES 1-5 (AS YET UNIDENTIFIED ENTITIES),<br><br>Defendants. | Civ. No. 17-281 (KM) (JBC)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiff, A.P., is on the autism spectrum and suffers from severe behavioral disorders. Represented by her mother, S.P., she seeks damages against the Allegro School, Inc. ("Allegro School"), as well as several current and former administrators and staff (collectively, "Allegro") for allegedly violating her individualized education plan ("IEP") by failing to collect data and, in some instances, fabricating reported data over the course of several years. She asserts a claim under Section 504 of the Rehabilitation Act ("Rehab Act"), as well as state law claims for violation of the New Jersey Law Against Discrimination ("NJLAD"), negligence, breach of contract, promissory estoppel, misrepresentation, fraud, negligent infliction of emotional distress, and intentional infliction of emotional distress. Allegro School and the other defendants removed this case to federal court based on the Rehab Act claim. They now move to dismiss the complaint in its entirety.

1

Because I find that I lack subject matter jurisdiction over the only federal-law claims in the complaint, I grant the motion to dismiss. Having done so, I will *sua sponte* remand the case to State court.

I.   **Background and Procedural History**[1]

I summarize the allegations of the Complaint, which are accepted as true for the purposes of this motion to dismiss only.

A.P suffers from severe autism, manifested in cognitive deficits, functional and behavioral problems, and severe learning disabilities, and has been in need of special programming for the disabled since birth. (Cplt. ¶¶ 12–13.) She is verbal, but her communication is impaired to the point that she has difficulty socializing and integrating with other students in a mainstream environment. (*Id.* ¶ 13.) S.P. is the parent and natural guardian of minor A.P., and they both reside within the Edison Township School District in New Jersey. (*Id.* ¶ 1.) The school board for the District placed A.P. at the Allegro School, a private school for special needs students in Morris County (*Id.* ¶¶ 2, 9.) She was a student there from July 9, 2007 to Dec. 10, 2010. (*Id.* ¶ 11.) Debby Lewinson, Richard Zanella, and Niamah Graham were all staff members and administrators at Allegro involved in A.P.'s education at some point or another. (Cplt. ¶¶ 3–5.)

---

[1] Record items cited repeatedly will be abbreviated as follows:

| | |
|---|---|
| "Cplt." = | Complaint and Jury Demand, Exhibit A to Notice of Removal (ECF No. 1, ex. A) |
| "Def. Br." = | Defendant's Brief for the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c) (ECF No. 5) |
| "Pl. Br." = | Plaintiff's Brief in Opposition to Motion to Dismiss the Complaint [conforming] (ECF No. 17) |
| "Def. Reply" = | Defendant's Reply Memorandum of Law in Further Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c) (ECF No. 20.) |
| "Pl. Sur." = | Plaintiff's Surreply to Defendant's Reply Brief (ECF No. 24.) |

Allegro was tasked with providing A.P. with Applied Behavior Analysis ("ABA") programming, a scientifically based method designed for students with autism that breaks down skills into smaller processes and uses various teaching methods to ensure that its students progress in their education. (*Id.* ¶ 14.) Particularly relevant to this litigation is that the ABA method requires strict and rigorous documentation of the student's behavior and progress through the course of the program, including graphing of skills, data acquisition, target and integrity skill documentation, and baseline evaluations, among other things. (*Id.*) Without proper documentation, the ABA program is not functional. (*Id.* ¶ 15.)

Initially, A.P. did well at Allegro. (*Id.* ¶ 16.) However, during the course of the 2009–10 school year, A.P. began to exhibit louder and more abusive verbal behavior and increased aggression. (*Id.* ¶ 17.) Concerned by this regression in her daughter's development, S.P. expressed her dissatisfaction at a June 1, 2010 IEP meeting, at which all the defendants were present. (*Id.* ¶ 18.) They explained to S.P. that A.P. was in fact doing well. (*Id.*) S.P. then conducted a classroom observation of A.P. with a Board Certified Behavior Analyst present on Oct. 6, 2010. (*Id.* ¶ 19.) At this observation, S.P. requested the relevant data and discovered that some data was not being collected. (*Id.* ¶ 20.) She even discovered that some of the staff had fabricated some data, which was then used to support that contention that A.P. was progressing when she really wasn't. (*Id.*) She determined that the staff at Allegro had failed to take data for almost half a year. (*Id.* ¶ 21.) With the help of a sympathetic staff member at the school, S.P. began to learn of the full extent of the falsified data. (*Id.* ¶ 25–27.)

On Oct. 12, 2010, another meeting was convened to discuss these issues. (*Id.* ¶ 28.) S.P. alleges that Allegro admitted it had been inflating A.P.'s progress during the past year and said it was attempting to analyze some of the data that had been located. (*Id.* ¶ 30.) Soon after this, A.P. was removed from the school and placed in a home-based program pending placement in an

3

appropriate out-of-district program. (*Id.* ¶ 33.) She was subsequently placed at the Douglass Developmental Disabilities Center in New Brunswick. (*Id.* ¶ 34.)

On May 13, 2011, A.P. filed an administrative complaint against the District with the New Jersey Department of Education ("NJDOE"). [2] The complaint initially requested mediation only, but was later amended to request compensatory education. After an unsuccessful mediation that occurred on July 21, 2011, A.P. amended her petition to include Allegro and Debby Lewison and converted the mediation request into a due process request. On Sept. 1, 2011, the matter was transferred over to the Office of Administrative Law ("OAL") with a hearing scheduled for Sept. 13, 2011. Before that hearing could occur, the District and A.P. settled the case, but only as to the claims between themselves. The agreement specifically carved out Allegro from the settlement, stating "[t]he Allegro School shall not be deemed to be a party to this Settlement Agreement, and both parties retain their rights to proceed against the Allegro School in the [OAL] or in any other forum." (Def. Br., Settlement Agreement ¶ 16, Ex. B.) The settlement provided that A.P. would receive home-based education services, reimbursed partly by private insurance and partly by the district, and that placement would be secured for A.P. at another out-of-district site. The District did not admit any liability, and all claims were released against it. On Nov. 30, 2011, the Administrative Law Judge at OAL reviewed the settlement and found it fully disposed of all the issues in controversy between the parties.

---

[2] This account of the procedural history is supported by a certification accompanying plaintiff's brief. (Pl. Br., Certification of Shelly Stangler, Esq.) It in turn relies on a number of exhibits, consisting of documents in the public record. (Exs. A-P, ECF No. 14) These are properly considered on a motion to dismiss, not for facts recited therein, but for the limited purpose of establishing the history of proceedings between the parties. Generally, the Court in considering a Rule 12(c) motion is confined to the allegations of the complaint and answer, but may consider any "undisputedly authentic document that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document" without converting the motion to dismiss into one for summary judgment. *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (analyzing the standard under Fed. R. Civ. P. 12(b)(6), whose standard is applied in the context of Rule 12(c)).

Nearly a year and a half later, on April 26, 2013, A.P. filed suit against Allegro in New Jersey state court seeking compensatory damages and punitive damages for violations of the New Jersey Law Against Discrimination ("NJLAD"), fraud, and breach of contract. Allegro filed a motion to dismiss in response, but in December 2013, while that motion was pending, the parties entered into a provisional agreement to settle the case. The motion was withdrawn, but in the end S.P. did not find the settlement terms acceptable. A.P.'s counsel was replaced, and current counsel took over after prior counsel left on Dec. 4, 2015.

On Dec. 10, 2015, Allegro again moved to dismiss, while A.P. cross-moved to amend her complaint to add federal claims of violations of § 504 of the Rehab Act and aiding and abetting those violations, as well as additional state law claims. Allegro opposed much of the cross-motion to amend, but did not oppose addition of the § 504 claims. On Feb. 5, 2016, the state court denied Allegro's motion to dismiss and granted A.P.'s cross-motion to amend.

A.P. filed her newly amended complaint on Feb. 17, 2016. Allegro filed another motion to dismiss but then withdrew that motion, refiling it on May 23, 2016. After a case management conference and a phone conference, the parties agreed to a voluntary dismissal without prejudice. This seemingly operated as a suspension, with plaintiff reserving the right to refile the action within six months.

A.P. refiled the amended complaint on November 29, 2016, and served it on December 19, 2016. Allegro served a notice of removal on Jan. 13, 2017. Once in this federal court, on Feb. 3, 2017, Allegro filed the current motion to dismiss the complaint. (ECF no. 5) Plaintiff filed an opposition (ECF no. 14), defendant filed a reply (ECF no. 20), and plaintiff, with leave, filed a surreply (ECF no. 24). The matter is fully briefed and ripe for decision.

## II. Legal Analysis
### a. Standard of Review
#### i. Rule 12(c) or 12(b)(6) motion

Allegro brings this motion to dismiss as both a Rule 12(b)(6) and a Rule 12(c) motion. (Def. Br. 1.) A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is often indistinguishable from a motion to dismiss, except that it is made after the filing of a responsive pleading. Fed. R. Civ. P. 12(h)(2) "provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Accordingly, when a 12(c) motion asserts that the complaint fails to state a claim, at least where no party relies on admissions in the answer, the familiar Rule 12(b)(6) standard applies. *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences principle not undermined by *Twombly, see infra*).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 55 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual

6

content that allows the court to draw the reasonable inference that defendant is liable for misconduct alleged." *Ashcroft v. Iqbal.* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### ii. Rule 12(b)(1) motion

A.P. argues, however, that at least part of this motion is properly reviewed under the standards of Rule 12(b)(1). That is so, she says, because a motion to dismiss for failure to exhaust administrative remedies under the IDEA, she says, implicates the subject matter jurisdiction of the court. (Pl. Br. 14–15.) In that, she is correct. A federal court may not exercise subject-matter jurisdiction over an IDEA dispute unless the administrative remedies have been exhausted. *D.M. v. N.J. Dep't of Educ.*, 801 F.3d 205, 212 (3d Cir. 2015) (citing *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 269 (3d Cir. 2014) ("Appellants' federal claims indeed fall within the ambit of the IDEA and require exhaustion . . . . We will therefore affirm the District Court's dismissal of Appellants' federal claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.")). *See also J.Q. v. Washington Twp. Sch. Dist.*, 92 F. Supp. 3d 241 (D.N.J. 2015) (Simandle, C.J.) (applying Rule 12(b)(1) and dismissing claims under Rehabilitation Act and NJLAD for failure to exhaust administrative remedies).[3]

Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter

---

[3] Of course a federal court always has the ongoing obligation to verify its subject matter jurisdiction. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S. Ct. 568 (1977). "A necessary corollary is that the court can raise sua sponte subject-matter jurisdiction concerns." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003).

7

jurisdiction. *Iwanowa*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true. *Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. Thus the standard of review is similar to a Rule 12(b)(6) standard, *see supra*.

On the other hand, a factual attack permits the Court to consider evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Thus, a factual attack under Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6). *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

Thus, I will analyze Allegro's motion to dismiss under the standard of a 12(b)(1). Because neither party relies on materials that could not be considered on a 12(b)(6) motion, I will treat it as a facial challenge.

### b. Administrative Exhaustion under the IDEA

Allegro moves to dismiss the entire complaint with prejudice, arguing that the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* mandates exhaustion of its administrative procedures and that this exhaustion requirement applies to all of A.P.'s non-IDEA claims which seek relief that can be obtained under the IDEA. (Def. Br. 7–18.) Further, it says that A.P. is now time-barred from reasserting these claims administratively, as the IDEA carries a two year statute of limitations, 20 U.S.C. § 1415(f)(3)(C). (Def. Br. 18–22.) A.P. does not dispute that there is an exhaustion requirement; rather, she argues that exhaustion does not apply in her case since Allegro is a private school and New Jersey regulations allows a parent or a student to pursue administrative remedies only against a district board of education or a public agency. (Pl. Br. 20–21.) Furthermore, she says, no provision in any governing statute or regulation in New Jersey allows a private school to invoke the IDEA procedures. (*Id.*)

8

The IDEA's primary purpose is "to ensure that all children with disabilities have available to them a free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1). Because parents and school representatives do not always agree on the most appropriate plan for educating a special needs student, the IDEA establishes formal procedures for resolving such disputes. *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 749 (2017). A dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local education agency responsible for the FAPE, as state law allows. *Id.* The matter, if not resolved between the parties, proceeds to a "due process hearing" before an impartial hearing officer, who will rule on it. Only then can a parent who remains unsatisfied seek judicial review of the hearing officer's decision by filing a civil action in state or federal court. *Id.* (citing 20 U.S.C. § 1415(f)(1)(A)).

The IDEA requires that a party exhaust its administrative procedures before seeking relief in federal court. 20 U.S.C. § 2425(i)(2); *Honig v. Doe*, 484 U.S. 305, 326–27 (1988). That exhaustion requirement applies to certain non-IDEA claims as well. *Batchelor*, 759 F.3d at 272; see discussion at pp. 11–13, *infra*. The Third Circuit has recognized three exceptions to the requirement of exhaustion: (1) where it "would be futile or inadequate"; (2) where the "issue presented is purely a legal question"; or (3) "the administrative agency cannot grant relief." *A.C. v. Scranton School Dist.*, 191 F. Supp. 3d 375, 394 (M.D. Pa. 2016) (citing *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994)).

A.P. essentially makes a threshold futility argument. Even if the IDEA exhaustion requirements, in some generic sense, apply to Rehab Act claims, she says, they do not apply to claims against private schools like Allegro. New Jersey law, she argues, does not explicitly authorize administrative proceedings against a private school. Therefore, to have filed such administrative proceedings before suing would have been futile.

9

The problem with this argument lies in its premise. The New Jersey regulations do contemplate administrative proceedings against private entities involved with publicly funded educational programs. *See* N.J.A.C. 6A:14-2.7(a) ("For students age three through 21 years, a due process hearing may be requested when there is a disagreement regarding identification, evaluation, reevaluation, classification, educational placement, the provision of a free, appropriate public education, or disciplinary action."); N.J.A.C. 6A:14-1.1(c) ("The rules in this chapter shall apply to all public and *private* education agencies providing publicly funded educational programs and services to students with disabilities.") (emphasis added); N.J.A.C. 6A:14-7.5(a) ("The educational program of a student with a disability provided through contractual agreements . . . shall be considered the educational program of the district board of education."). The OAL, likewise, acknowledges that parents have the ability to assert jurisdiction over private schools in these proceedings.[4] *See, e.g., B.H. by R.B.H. v. Paterson School Dist. & the Windsor Academy*, No. 1345-00/00-3561, 2000 N.J. AGEN LEXIS 102, at *10–11 (N.J. O.A.L. Feb. 03, 2000) ("[T]he conclusion seems inescapable in New Jersey, when a student with a disability is placed by his/her district in a private receiving school, and the student alleges that the private school is interfering with the students [sic] right to FAPE, the private receiving school must answer the charge in the same tribunal as the district sending school: the OAL. A contrary conclusion would thwart the mandate expressed in the IDEA that children placed in private schools by their local school districts receive all of the same rights and protections as they would receive if educated in the local district. (citations omitted)").[5]

---

[4] The Settlement Agreement, which was reviewed and approved by the OAL, also suggests that A.P. was able to pursue these claims against Allegro in that forum. (Def. Br., Settlement Agreement ¶ 16, Ex. B. ("The Allegro School shall not be deemed to be a party to this Settlement Agreement, and both parties retain their rights to proceed against the Allegro School in the [OAL] or in any other forum.").)

[5] The Administrative Law Judge also pointed out that it should have come as no surprise to Windsor Academy that it was subject to the jurisdiction of a due process

The Hon. Madeline Arleo dealt indirectly with this issue in a recent case, *Barker v. Our Lady of Mount Carmel School*, No. 12-4308, 2016 WL 4571388 (D.N.J. Sept. 1, 2016). There, a mother and her two children sued a Catholic school, its affiliated church, and the Roman Catholic Archdiocese of Newark, asserting federal claims of disability and race discrimination, as well as state law claims. *Mount Carmel*, 2016 WL 4571388, at *1. They argued that the IDEA's exhaustion requirements were not mandatory for nonpublic school students, who were confined to either mediation or a suit in federal court. As support for that view, they cited a New Jersey Department of Education Handbook. *Id.* at *9. Judge Arleo pointed out that what governed were the "relevant statutes and rules that establish the exhaustion requirements, not a handbook." She held that the exhaustion requirements applied in that case.[6]

I conclude, therefore, that if the IDEA exhaustion requirements apply to this Rehabilitation Act claim, they apply to Allegro, despite it not being a public school.

I must consider, however, whether the administrative exhaustion requirements of IDEA apply to these Rehab Act claims at all. The Rehab Act, of course, is a separate statute from IDEA. Nevertheless, "before the filing of a civil action under such laws [referring to *inter alia,* the "Rehabilitation Act of 1973 [29 U.S.C. 790 et seq.], or other Federal laws protecting the rights of children with disabilities"] seeking relief that is also available under [IDEA], the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(*l*).

The Supreme Court, in *Fry v. Napoleon Community Schools,* has made it clear that, in determining whether a non-IDEA claim is subject to the IDEA

---

hearing, since "the very contract which [the private school] seeks to enforce obligates it to comply with State and Federal law." *Windsor Academy*, 2000 N.J. AGEN LEXIS 102, at *11.

6   She specifically dismissed their Rehabilitation Act, ADA, and § 1983 claims. *Mount Carmel*, 2016 WL 4571388, at *9.

11

exhaustion requirement, a court is not bound by the label plaintiff attached to the claim. Rather, it must carefully look at the gravamen of the complaint to see whether the claim, however denominated, is essentially an IDEA claim. *See Fry*, 137 S. Ct. at 756. Specifically, a court may structure its analysis in relation to two questions:

(1) Could this claim have been brought if the alleged conduct had occurred at a public facility that is not a school?

(2) Could an adult have pressed the same grievance?

*Id.*[7]

Thus, in *Fry*, a student sought damages under the Americans with Disabilities Act (ADA) where a school barred her from using a service dog in her kindergarten class. This, as the Court viewed it, was not a claim under IDEA that the student was being denied a FAPE; rather it was a claim for damages based on denial of access. Indeed, the Court compared it to a typical ADA case based on a facility's failure to provide wheelchair access. 137 S. Ct. at 756. Such an access claim, although brought against a school, could just as appropriately be brought against a theater or public library.

A.P.'s § 504 claims are different. They are based on a set of factual allegations which boil down to a contention that Allegro did not appropriately

---

[7] I extract those two questions from the following, more elaborate discussion in *Fry*:

> "One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting and (not an adult in that setting or a child in some other) has a viable claim."

*Fry*, 137 S. Ct. at 756.

12

collect data. Collection of that data was required only because it was a necessary component of A.P.'s IEP under IDEA. Attempting to flee IDEA and find refuge in the Rehab Act, the plaintiff contends that this data collection failure created a "hostile education environment" (Pl. Cplt. ¶ 63), and makes generalized allegations that this discriminated against her on the basis of her disability. That attempt fails, in my view. Although she fashions her allegations as § 504 claims, they still fall within the first element of the *Fry* test. There is simply no way that these claims could be brought outside of the school context, and they lie within the heartland of IDEA. The expectation that data would be collected arose solely from the ABA program, which was prescribed as part of plaintiff's IEP and implemented by Allegro.

The claims asserted here, then, arise from Allegro's being the school where A.P. was placed under IDEA, and the program that was agreed to be implemented under IDEA. They are essentially IDEA claims brought in another guise. A.P. should have first exhausted her administrative remedies as prescribed in the New Jersey regulations before filing suit in state court.[8]

That administrative procedures under New Jersey regulations be exhausted is a prerequisite that goes to the heart of this court's subject matter jurisdiction over A.P.'s § 504 claim.[9] I will dismiss A.P.'s claims brought under § 504 of the Rehab Act (Count I) for lack of subject matter jurisdiction, without prejudice.[10]

---

[8] In its Notice of Removal, Allegro also claimed that other state law claims in the complaint were simply "repackaged" IDEA claims. (*Id.* ¶ 19) If that were true, the administrative exhaustion requirement would apply *a fortiori*.

[9] *See* Section II.a.ii, *supra* (for ease of reference, citing *D.M. v. N.J. Dep't of Educ.*, 801 F.3d 205, 212 (3d Cir. 2015); *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 269 (3d Cir. 2014); *J.Q. v. Washington Twp. Sch. Dist.*, 92 F. Supp. 3d 241 (D.N.J. 2015)).

[10] "Where a district court lacks subject-matter jurisdiction, its 'disposition of such a case will . . . be without prejudice.'" *Siravo v. Crown, Cork & Seal Co.*, 256 F. App'x 577, 580–81 (3d Cir. 2007) (non-precedential) (citing *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir.1997)). That is not to suggest, of course, that A.P. can simply refile this claim; that would require that she first exhaust

### III. Federal Jurisdiction and Remand

Allegro based its removal petition on this court's federal question jurisdiction over A.P.'s § 504 claim. *See* 28 U.S.C. § 1331. (Notice of Removal ¶¶ 5–7, ECF No. 1) There being no claim of diversity of citizenship, *see* 28 U.S.C. § 1332, subject matter jurisdiction over the state law claims would necessarily be predicated on the supplemental jurisdiction statute, *see* 28 U.S.C. § 1367.[11] I therefore consider whether it is appropriate to (a) dismiss the entire action; (b) dismiss the federal-law claims while retaining supplemental state-law claims; or (c) remand the remaining state-law claims to state court.

Here, the court never had jurisdiction over any federal-law claim in the first place. The very premise and foundation of supplemental jurisdiction is the existence of some claim over which the court possessed original jurisdiction, at least at some point. Because I have held that there is no such claim, the state law claims, too, cannot be heard. *See Bermingham v. Sony Corp. of Am., Inc.*, 820 F. Supp. 834, 855 (D.N.J. 1992), *aff'd*, 37 F.3d 1485 (3d Cir. 1994) (dismissing state law claims after, *inter alia*, dismissing plaintiff's Title VII claim

---

administrative remedies. Defendant suggests that this is a practical impossibility under the applicable statute of limitations, but I do not reach that issue.

11 The procedural niceties of removal and remand are largely mooted when the defect is one of subject matter jurisdiction, which robs the federal court of the power to proceed.

A case over which a federal court would have original jurisdiction may be removed from state court by the filing of a notice. 28 U.S.C. § 1441(a) There is, of course, jurisdiction over a federal law claim, *see* 28 U.S.C. § 1331, and the court may possess supplemental jurisdiction over related state law claims, *see* 28 U.S.C. § 1367; *see also* 1441(c)(1)(A).

Ordinarily, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting for the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b)(1). A motion to remand the case to state court "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). Still, a federal court cannot proceed in the absence of subject matter jurisdiction, even if the parties do not object. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id.*

for failure to exhaust EEOC remedies, stating that "[s]upplemental jurisdiction . . . depends upon the existence of subject matter jurisdiction over other claims in the action.").[12] The provisions conferring discretion to retain state law claims after the dismissal of federal claims seem to imply that the federal claims must once have been substantial enough to confer original jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction").

At least in the case of non-jurisdictional dismissals of federal claims, Section 1367(c) provides that dismissal of the remaining state claims is discretionary, not mandatory. And it must be said that, even in the case of jurisdictional dismissals, cases continue to cite the discretionary language of § 1367(c), albeit without analyzing the issue. *See, e.g., Fuentes v. S. Hills Cardiology*, 946 F.2d 196, 198 n.3 (3d Cir. 1991); *J.Q. v. Washington Twp. Sch. Dist.*, 92 F. Supp. 3d 241, 253 n.4 (D.N.J. 2015) ("[h]aving dismissed Plaintiffs' federal claims [on a 12(b)(1) jurisdictional motion] without prejudice, the Court declines to exercise supplemental jurisdiction over their corresponding state law claim."); *Sokolowski v. Metropolitan Transp. Authority*, 849 F. Supp. 2d 412, 418 (S.D.N.Y. 2012) (after finding no subject matter jurisdiction over federal Railway Labor Act labor claim and declining to exercise supplemental jurisdiction over state law claims, citing § 1367(c)(3)).

---

[12] There are unusual situations where the rule that jurisdiction is measured as of the time of filing may preserve subject matter jurisdiction, even where the original basis for federal subject matter jurisdiction has disappeared. *Cf. California Sun Tanning USA, Inc. v. Elec. Beach, Inc.*, No. CIV.A. 07-4762, 2008 WL 4831694, at *1 (E.D. Pa. Nov. 4, 2008) (holding that although federal claims had become moot, subject matter jurisdiction is measured at the time of filing, so the court was not divested of jurisdiction to retain supplemental state claims). In *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, however, the Third Circuit cautioned that the rule has very limited application to federal-question, as opposed to diversity, jurisdiction. 101 F.3d 1492, 1503 (3d Cir. 1996). And even that situation stands in contrast to the situation here, in which there never was a basis for federal-question jurisdiction, because plaintiff concededly did not exhaust administrative remedies.

15

I will therefore consider the § 1367(c) discretionary factors, for two reasons: First, out of caution, since it makes no difference to the result; and second, because I find the same factors relevant to the decision whether to dismiss outright or remand to state court.

> [W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience and fairness to the parties provide an affirmative justification for doing so.

*Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). In short, the presumptive rule is that, even where supplemental jurisdiction may be found, the state claims shall be dismissed, unless reasons of economy and fairness dictate otherwise. Thus, where the case has been substantially litigated, it may be a proper exercise of discretion to retain it. *See Growth Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277. 1284–85 (3d Cir. 1993) (remanding for exercise of discretion as to whether to retain pendent claim, noting that where the district court already heard evidence necessary to decide the state contract claim, it might retain jurisdiction). Where, on the other hand, the case is nowhere close to trial, remand is the proper course. *Freund v. Florio*, 795 F. Supp. 702, 710 (D.N.J. 1992) ("[A]t this early stage in the litigation, dismissal of the pendent state claims in a federal forum will result in neither a waste of judicial resources nor prejudice to the parties.").

This case is nowhere near trial. There has been no discovery conducted yet. The only substantive proceedings in this forum consist of this motion to dismiss. Nor does fairness dictate that I decide the state-law issues, as no party would be prejudiced by having another forum decide them.

This case originated in plaintiff's chosen state-court forum. It was pending there in some form, on-and-off, for nearly four years, from April 2013 until January 2017. It was only through a series of procedural happenstances that the January 2017 removal was even facially timely under the 30-day

16

deadline of the removal statute. See 28 U.S.C. § 1446(b)(1). The removal statute does not restrict remand where subject matter jurisdiction is lacking. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Mere dismissal, moreover, might be prejudicial to the plaintiff, who never sought this federal forum; it would require a new filing in state court, which the defendant could then oppose as untimely. It makes sense that this case should resume in state court, and I will therefore remand, rather than dismiss it.

## IV. Conclusion

For the reasons stated above, I will GRANT Allegro's motion to dismiss Count I of A.P.'s complaint (§ 504 Claims) without prejudice for lack of subject matter jurisdiction, and REMAND all other claims to the Superior Court of New Jersey, Law Division, Morris County.

_____
**Kevin McNulty**
**United States District Judge**